NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MONARCH MEDICAL PET SERVICES LLC, et al., <br><br>        Appellant, <br><br>        v. <br><br>LYON FINANCIAL SERVICES d/b/a U.S. BANK PORTFOLIO SERVICES AND AGENT FOR U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE and OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF INTEGRAL NUCLEAR ASSOCIATES LLC, <br><br>        Appellees. | **Hon. Dennis M. Cavanaugh** <br><br>**OPINION** <br><br>Civil Action No. 2:12-cv-277 (DMC) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon the Appeal of Monarch Medical Pet Services, LLC ("Appellant") of the Bankruptcy Court's Order entered on November 29, 2011. ECF No. 1. Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After careful consideration, and based upon the following, the Order entered by the Bankruptcy Court is **affirmed**.

**I.    BACKGROUND[1]**

This matter concerns a dispute over the payment of professional fees pursuant to a bankruptcy plan. On February 3, 2011, Integral Nuclear Associates, LLC and its affiliated Debtors

---

[1] The facts set forth in this section are taken from Appellant's Statement of Facts and from Appellees' Counter-statement of Facts.

(collectively, the "Debtors") filed voluntary petitions for relief pursuant to Chapter 11 of Title 11 of the United States Bankruptcy Code.[2] Appellant's Br. 5, ECF No. 6; Appellees' Br. 3, ECF No. 12. During the Bankruptcy case, the Debtors were represented by certain legal and financial advisors, including Porzio, Bromberg & Newman PC ("Porzio"), Donoghue, Barrett & Singal PC ("Donoghue"), and the Kurzer Group LLC ("Kurzer"). Appellant's Br. 5-6. Also during the Bankruptcy case, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee"), which included Lyon Financial Services d/b/a U.S. Bank Portfolio Services, as Successor Servicer and Agent for U.S. Bank National Association as Trustee ("U.S. Bank") amongst its three members. Appellant's Br. 6. The Creditors' Committee was represented by Riker, Danzig, Scherer, Hyland, & Perretti, LLP ("Riker") and EisnerAmper LLP ("Eisner"). Porzio, Donoghue, Kurzer, Riker, and Eisner are collectively referred to as the "Professionals." U.S. Bank and the Creditors' Committee are the Appellees in this action.

On May 31, 2011, the parties reached an agreement on the terms of the plan of reorganization (the "Plan"), under which Monarch would contribute $5,100,00 to acquire the outstanding equity of Debtors. Appellant's Br. 7-8; Appellees' Br. 4. This consideration created a "Plan Fund" that would be distributed to creditors, including U.S. Bank, and other parties in an order of priority established by the Plan. Appellant's Br. 9; Appellees' Br. 4. The Plan provided that the Plan Fund would act like a "waterfall" with its cash flowing first to secured creditors, second to priority creditors (including the Professionals), and third to general unsecured creditors. Appellant's Br. 9; Appellees'

---

[2] Appellees point out that these petitions were Debtors' second bankruptcy filings. Appellees' Br. 3. A portion of the Debtors filed for Chapter 11 relief on April 15, 2007 which resulted in a confirmed plan of reorganization. Appellees' Br. 3. Accordingly to Appellees, the Debtors were unable to perform their obligations under this plan, thus necessitating the filing of the petitions at issue here.

Br. 4. The Bankruptcy Court confirmed the Plan on July 31, 2011 (the "Confirmation Order"), and the newly formed "Reorganized Debtors" declared the Plan effective on September 16, 2011. Appellant's Br. 4.

Prior to its approval of the Plan, the Bankruptcy Court entered a series of orders authorizing Debtors to use the cash they had on hand (the "Committed Cash Collateral") to pay expenses included in a weekly budget, including fees and expenses owed to the Professionals (the "Cash Collateral Orders"). Appellant's Br. 6; Appellees' Br. 3. A number of such fees and expenses were paid. After the entry of the Confirmation Order, U.S. Bank filed an omnibus objection (the "Fee Objection") to the allowance and payment of any further Professional Fees by the debtors.[3] App'x to Br. of Appellant 249, ECF No. 6-11. As a result, not further Professional Fees were approved by the Court for payment by the Debtors.

Sometime following the Effective Date of the Plan, U.S. Bank and the Professionals realized that approximately $63,000 of Cash Collateral that had been budgeted for payment of Professional Fees had not been expended by Debtors. Appellant's Br. 12-13; Appellees' Br. 5, 8. Appellees demanded payment of this unpaid Cash Collateral from the Reorganized Debtors. Appellant's Br. 13; Appellees' Br. 7. Appellant objected to any such payment, and argued that since the Effective Date had passed, the Reorganized Debtors were no longer required to use their cash to pay any claim

---

[3] Pursuant to the Plan terms, "Allowed Administrative Expense Claims . . . shall be paid by the Disbursing Agent, in Cash, first, from the Committed Cash Collateral and, then, to the extent the Committed Cash Collateral is not sufficient to pay all Allowed Administrative Expense Claims, from the Plan Fund . . . ." Plan § 2.1, App'x to Br. of Appellant 124, ECF No. 6-6. U.S. Bank's claims are paid from the Plan Fund, and thus, U.S. Bank's recovery was affected by the amount of Committed Cash Collateral available to pay Professional fees. Where more Committed Cash Collateral remained available, less of the Plan Fund would be needed to pay Professional fees. Consequently, more of the Plan Fund would be available to pay U.S. Bank's claims.

arising prior to the Effective Date, and that the Reorganized Debtors had received a discharge as a result of the Bankruptcy process. Appellant's Br. 14. During a November 15, 2011 hearing (the "Fee Hearing"), the Honorable Novalyn L. Winfield, U.S.B.J., found that the fees at issue were "an administrative expense" and "a condition of the confirmation of the plan." Bankr. Hr'g Tr. 22, App'x to Br. of Appellant 265 ("Bankr. Hr'g. Tr."), ECF Nos. 6-11 and 6-12. Judge Winfield went on to note that the discharge in this matter was conditioned on the completion of the obligations under the plan, which included the payment of these fees. Bankr. Hr'g. Tr. 22. Judge Winfield therefore concluded that the amount "needs to be paid" and is "an obligation of the reorganized debtors under the terms of the plan." Bankr. Hr'g. Tr. 22.

Appellant filed the present Appeal on January 17, 2012. In its moving brief filed January 31, 2012, Appellant contends once again that the Reorganized Debtors were discharged from any pre-Effective Date obligations, and that Monarch and the Reorganized Debtors fully performed their respective obligations under the Plan. Appellant's Br. 16. Appellees filed their Opposition on February 14, 2012, contending that Monarch lacks standing to pursue this Appeal. Appellees' Br. 9. Appellees further argue that Judge Winfield did not abuse her discretion in ruling that the remaining Cash Collateral needed to be paid, that the discharge does not excuse the Reorganized Debtors' obligation, and that since the Plan expressly contemplates the funding of Committed Cash Collateral after the Effective Date, Monarch's reliance on the Fee Objection as a reason for their failure to pay the Committed Cash Collateral is ineffectual. Appellant's Br. 9. Appellant filed a Reply on February 28, 2012. ECF No. 15. The matter is now before this Court.

II.     **STANDARD OF REVIEW**

This Court has jurisdiction over final judgments and orders of the Bankruptcy Court pursuant

to 28 U.S.C. §158.  A district court applies a "clearly erroneous" standard to the bankruptcy judge's findings of fact and reviews the bankruptcy judge's legal conclusions *de novo*.  See FED. R. BANKR. P. 8013; In re Cohn, 54 F.3d 1108, 1113 (3d Cir. 1995).  A factual finding is clearly erroneous if, in reviewing all the evidence, the reviewing court is left with the "definite and firm conviction that a mistake has been committed," even if there is evidence to support the finding.  In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d. Cir. 1992); (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).  A district court reviews the bankruptcy court's "exercise of discretion for abuse thereof." Manus Corp. v. NRG Energy, Inc., (In re O'Brien Envtl. Energy, Inc.), 188 F.3d 116, 122 (3d. Cir. 1999).  "A bankruptcy court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts."  Id.

### III.   DISCUSSION

A. Standing

Appellees raise the threshold issue of standing, which the Court will briefly address before turning to the merits of this Appeal.  Standing to appeal in a bankruptcy case is limited to "persons aggrieved" by an order of the bankruptcy court.  Gen. Motors Acceptance Corp. v. Dykes (In re Dykes), 10 F.3d 184, 187 (3d Cir. 1993).  "Standing is denied to marginal parties involved in bankruptcy proceedings who, even though they may be exposed to some potential harm incident to the bankruptcy court's order, are not 'directly affected' by that order." Travelers Ins. Co. v. H.K. Porter Co., Inc., 45 F.3d 737, 741 (3d Cir. 1995).  Whether someone is a person aggrieved is normally a question of fact for the district court.  In re Dykes, 10 F.3d at 188.  Bankruptcy appellate Standing is more restrictive than the "broad right of participation in the early stages of a bankruptcy proceeding."  In re Combustion Eng'g, Inc., 391 F.3d 190, 214 (3d Cir. 2004).  The "persons

-5-

aggrieved test . . . exists as a prudential standing requirement that limits bankruptcy appeals to persons whose rights or interests are directly and adversely affected pecuniarily by an order or decree of the bankruptcy court." Id. at 214 (3d Cir. 2004) (citing In re Dykes, 10 F.3d at 187) (internal quotations omitted).

Appellees' argument relies heavily on the Third Circuit's statement that "a corporation is a legal entity separate from its president and shareholder, and an individual shareholder . . . generally may not appeal a judgment against a corporation." In re eToys, Inc., 234 Fed. App'x 24, 25 (3d Cir. May 16, 2007). Appellees contend that "Monarch alone has appealed the Fee Order and, solely as the equity owner of the Reorganized Debtors, it lacks standing." Appellees' Br. 11. Appellees bolster this argument by pointing out that the Appeal was signed only by Monarch's counsel, and by noting that the Reorganized Debtors have not appeared in this Appeal nor filed an appellant's brief. Appellees' Br. 11. Arguing that Appellant's sole basis for the Appeal can therefore only be its status as equity owner of the Reorganized Debtors, Appellees claim that the Appeal is barred by In re eToys, since Monarch was not directed to pay the Committed Cash Collateral and its individual rights were not impacted by the Fee Order. Appellees' Br. 11-12.

Appellees' argument fails because it is not sufficiently supported by the record. The Notice of Appeal plainly states "Monarch Medical Pet Services, LLC, the Reorganized Debtors and the Plan Sponsor, appeal under 28 U.S.C. § 158(a) from the Order of the Honorable Novalyn L. Winfield . . . ." App'x to Br. of Appellant 296, ECF No. 6-12. While it is true that named counsel for the Reorganized Debtors did not sign the Notice of Appeal, Appellees do not direct the Court any authority indicating why this should be so critical. Further, the Court finds that the Reorganized Debtors are actively involved in this Appeal, as indicated by substance, language, and signatures on

Appellant's other submissions. Accordingly, the Court finds that the Reorganized Debtors do have an interest as a party aggrieved by the Bankruptcy Court's Order, and that Appellant therefore has standing to pursue this Appeal.

B. Judge Winfield's Decision

The Court now turns to the substance of Judge Winfield's decision. As an initial matter, the parties dispute the applicable standard of review. Appellees contend that the Fee Order involved the Bankruptcy Court's interpretation of the Plan, thus requiring a review only for abuse of discretion. Appellees' Br. 1-2. Appellant contends, however, that in this instance the Bankruptcy Court's interpretation of the Plan terms necessitates a de novo standard of review. Appellees' Reply Br. 1-3. The Third Circuit adopted a "bifurcated approach" to this issue, holding that "a bankruptcy court's interpretation of its own order ought to be subject to review for an abuse of discretion," while acknowledging that "this deferential standard should not apply, of course, if the issue being reviewed presents only a question of law." In re Shenango Group Inc., 501 F.3d 338, 346 (3d Cir. 2007). Thus, while the bankruptcy court's interpretation of its own order's ambiguity is reviewed de novo, if ambiguity is found, then the bankruptcy court's interpretation will be deferred to "unless it is unreasonable under the circumstances." In re Dura Automotive Sys., Inc., No. 09-69, 2010 WL 180249, at *1 (D.Del. Jan. 19, 2010) (citing Shenango Group, 501 F.3d at 346).

In this instance, the parties have not drawn the Court's attention to any explicit findings of ambiguity by Judge Winfield. Nevertheless, it is plain to the Court that the Plan terms interpreted were ambiguous. During the Fee Hearing, Judge Winfield grappled with the meaning of "Committed Cash Collateral," and what types of funds and expenses were included in the concept.

Bankr. Hr'g Tr. 21. Judge Winfield eventually determined that the term was broad enough to include the fees at issue as an administrative expense. Bankr. Hr'g Tr. 22. This same question is presented in this Appeal as well. The need for such a determination indicates to the Court that the Plan terms are ambiguous. The sole remaining issue, therefore, is whether Judge Winfield abused her discretion by issuing the Fee Order.

Appellant relies heavily on Section 1141(d)(1)(A) of the Bankruptcy Code in its first point on this issue, arguing that "confirmation of the Plan discharged the Reorganized Debtors from liability for any debt (including the Professional Fees) that arose before the Effective Date." Appellant's Br. 17. Section 1141(d)(1)(A) provides:

> Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan--
> (A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not--
> (i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title; or
> (ii) such claim is allowed under section 502 of this title; or
> (iii) the holder of such claim has accepted the plan

For this matter, the key language of Section 1141(d)(1)(A) is that discharges occur "[e]xcept as otherwise provided . . . in the plan . . . ." In this instance, the Plan specifically states:

> Allowed Administrative Expense Claims other than Postpetition Administrative Trade Claims shall be paid by the Disbursing Agent, in Cash, first, from the Committed Cash Collateral and, then, to the extent the Committed Cash Collateral is not sufficient to pay all Allowed Administrative Expense Claims, from the Plan Fund <u>on the later of: (i) seven (7) days after the Effective Date; or (ii) fourteen (14) days from the date of entry of a Final Order Allowing such Claim</u> as an Administrative Expense Claim.

Plan § 2.1 (emphasis added). The Plan thus provides for the payment of Administrative Expense Claims after the effective date. Further, as Judge Winfield took note of in the Fee Hearing, the

-8-

portion of the Plan discussing Discharge states that "[n]othing in this Section 12.1 shall be deemed or construed to discharge the Reorganized Debtors' obligations created under and in accordance with the terms of this Plan and the Confirmation Order." Plan § 12.1. Judge Winfield found the fees at issue to be administrative expenses, a condition of the confirmation of the Plan, and therefore not absolved by the Plan's Discharge terms. Given the Plan's terms, and the fact that any discharge is subject to the Plan's terms, the Court concurs with Judge Winfield's ruling, and finds Appellant's argument that Section 1141(d)(1)(A) of the Bankruptcy Code discharged the Reorganized Debtors of this obligation to be unconvincing.

Appellant's reliance on case-law supposedly to the contrary is misplaced. Appellant relies on In re Benjamin Coal Co., 978 F.2d 823 (3d Cir. 1992) for the proposition that Section 1141(d)(1) provides Debtors with a discharge for all post-petition, pre-confirmation claims and leaves the Professionals only with "new" claims that are subject to the chain of priority in the Plan. Appellant's Br. 18-19. Benjamin Coal does not avail Appellant, however, for two reasons. First, as Appellees point out, Benjamin Coal dealt with a situation in which a creditor filed an untimely administrative claim after the case was converted from Chapter 11 to a Chapter 7 liquidation. That is not the situation presented to the Court in the present matter. Further, in this instance, the payment of the Professional fees was a condition of the Plan. Accordingly, no discharge could take place until after the Professional fees were paid, permitting confirmation of the Plan. Appellant's reliance on various bankruptcy court holdings on this point is similarly misplaced, as none of those holdings change the situation presented here, in which the payment of Professional fees was a condition of the Plan confirmation.

Appellant's remaining contentions are both premised on the Plan's status as a binding

contract.  First, Appellant contends that since the Plan acts as a binding contract between the parties, and because Monarch and the Reorganized Debtors already fully performed their obligations under the plan, no further payments are required.  Appellant's Br. 23.  Appellant then goes on to argue that Judge Winfield's ruling amounts to an impermissible equitable reformation of the Plan, and should therefore be overturned.  Appellant's Br. 30.  While Appellant does correctly state that the Plan acts as a binding contract between the parties, both of Appellant's remaining arguments fail for the same reason.  The Fee Order did not go outside of the contract or modify the contract terms; instead, the Fee Order simply enforced the terms of the Plan.  Section 2.1 of the Plan specifically contemplates the funding of Committed Cash Collateral "fourteen (14) days from the date of entry of a Final Order Allowing such Claim as an Administrative Expense Claim."  The Fee Order requiring payment of "the unpaid portion of the Committed Cash Collateral (as defined in the Plan)" is entirely consistent with these Plan terms.  Accordingly, Judge Winfield did not abuse her discretion in entering the Fee Order.

### IV.   CONCLUSION

The Bankruptcy Court was correct in its application of law to the facts in this case.  Therefore, the Appeal is **denied**, and the Bankruptcy Court's Order is **affirmed**.  An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:        August    8  , 2012
Orig.:       Clerk
cc:          All Counsel of Record
             File